UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN COURTHOUSE

| | |
|---|---|
| Cecilia Yang, individually and on behalf of all others similarly situated, | 1:22-cv-07070 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Johnson & Johnson Consumer Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges on information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Johnson & Johnson Consumer Inc. ("Defendant") manufactures, markets, labels and sells zinc oxide SPF 50 sunscreens in stick format under the Neutrogena brand to babies and adults ("Products").




2. Though the two products appear distinct, with the baby variety containing numerous label statements and features absent from the adult version, they are substantively identical, yet sold at dramatically different prices.

## I. PRICE DISCRIMINATION

3. During the past ten years, numerous states and Congress have taken steps to end what is referred to as the "Pink Tax."[1]

4. This refers to the phenomenon where substantially similar or identical personal care products are marketed to women which exceed the price of the men's version of those items.

5. According to studies, women regularly pay at least 25% more for such products, even though it is substantively identical to the male version, save for differences in color and one or two inactive ingredients.

6. While gender-neutral explanations have been offered as the basis for this tax, years of research have shown that the only viable explanation is based on gender discrimination.

7. Social scientists have identified variations of the "pink tax" between personal care products marketed as for children and adults.

8. Numerous explanations purport to explain such significantly different prices, including packaging formats, label statements, retailer discretion to set prices different than those recommended by the manufacturer, insurance requirements and regulatory factors.

9. This has been referred to as the "kids' tax," which imposes additional costs on parents with children.

10. The "kids' tax" exists because studies have shown that demand for children's

---

[1] The color pink is often used by marketers for women's products, although it often is used to convey gentleness and softness.

versions of personal care products is inelastic, since parents are less sensitive to paying higher prices when they believe they are buying products specifically formulated for their children.

### II. BABY AND REGULAR ZINC OXIDE STICK SUNSCREENS ARE PRACTICALLY IDENTICAL

11. Though both contain the standard sunscreen label claims of "Broad Spectrum," "UVA/UVB" and "SPF 50," the other differences appear significant.

| Differences | Baby | Adult |
|---|---|---|
| Name | Pure & Free Baby | Mineral Ultra Sheer |
| Color | Pink | Blue |
| Applicator/Shape | Tube | Wide Stick |
| Quantity (oz) | 0.47 | 1.5 |
| Price ($) | 7.97 | 12.97 |
| Claims | Pure Screen<br>Zinc oxide<br>100% naturally-sourced zinc oxide<br>fragrance free<br>ideal for delicate skin<br>ideal for face and body | Dry-Touch |

12. The back label of the Baby version describes it as "[an] extra-gentle formula [that] is ideal for baby's delicate, sensitive skin."

> NEUTROGENA® PURE & FREE® Baby Mineral Sunscreen Stick SPF 50 provides superior broad-spectrum UVA/UVB protection with PURESCREEN® technology, 100% naturally-sourced zinc oxide. This extra-gentle formula is ideal for baby's delicate, sensitive skin. Glides on easily for a quick, no mess application.

13. Defendant knows that parents prefer products containing natural and pure ingredients, without fragrances, so that their babies' "delicate skin" will not be irritated.

14. The prominent representations, "Pure & Free," "Pure Screen," "100% naturally-sourced zinc oxide," "fragrance free," "ideal for delicate skin," "ideal for face and body," and pink

3

color lead parents to believe the Baby version is specifically designed for their babies' needs.

15. The result is that parents will pay significantly more for such products, which is why, on a per ounce basis, the Baby version is $16.96, almost two times the price of the Adult version at $8.65.

16. This price discrepancy confirms to parents they are buying different products, because they will not, at the point-of-purchase, theorize as to other explanations.

17. However, not only do the Products contain the identical amount of the active zinc oxide ingredient at 21.6%, 12 of their 13 inactive ingredients are identical.

Baby: **Inactive ingredients** Octyldodecyl Neopentanoate, C12-15 Alkyl Benzoate, Synthetic Wax, Paraffin, Silica, Neopentyl Glycol Diethylhexanoate, Ozokerite, Isopropyl Myristate, Adipic Acid/Diglycol Crosspolymer, Triethoxycaprylylsilane, Neopentyl Glycol Diisostearate, Caprylyl Glycol, Avena Sativa (Oat) Kernel Oil

Adult: **Inactive ingredients** Octyldodecyl Neopentanoate, C12-15 Alkyl Benzoate, Synthetic Wax, Paraffin, Silica, Neopentyl Glycol Diethylhexanoate, Ozokerite, Isopropyl Myristate, Adipic Acid/Diglycol Crosspolymer, Triethoxycaprylylsilane, Neopentyl Glycol Diisostearate, Caprylyl Glycol, Tocopheryl Acetate

18. Moreover, their 12 identical inactive ingredients are present in the same relative amounts, shown through their listing in the below table.

| Baby | Adult |
|---|---|
| Octyldodecyl Neopentanoate | Octyldodecyl Neopentanoate |
| C12-15 Alkyl Benzoate | C12-15 Alkyl Benzoate |
| Synthetic Wax | Synthetic Wax |
| Paraffin | Paraffin |

4

| | |
|---|---|
| Silica | Silica |
| Neopentyl Glycol | Neopentyl Glycol |
| Diethylhexanoate | Diethylhexanoate |
| Ozokerite | Ozokerite |
| Isopropyl Myristate | Isopropyl Myristate |
| Adipic Acid/Diglycol Crosspolymer | Adipic Acid/Diglycol Crosspolymer |
| Triethoxycaprylylsilane | Triethoxycaprylylsilane |
| Neopentyl Glycol Diisostearate | Neopentyl Glycol Diisostearate |
| Caprylyl Glycol | Caprylyl Glycol |
| ==Avena Sativa (Oat) Kernel Oil== | ==Tocopheryl Acetate== |

19. The only difference is the thirteenth and least predominant ingredient, which is avena sativa (oat) kernel oil in the Baby version and tocopheryl acetate in the Adult version.

20. That the Baby contains oat kernel oil is not sufficient to explain the price discrepancy or to provide any special attributes for a baby compared to tocopheryl acetate for multiple reasons.

21. First, the benefits of sunscreen are exclusively from its active ingredients, which is identical in type and amount in the Products.

22. Second, avena sativa (oat) kernel oil and tocopheryl acetate are the last, and least predominant ingredients in the Products, present in de minimis amounts, and unable to have any functional or physical effect when the sunscreen is applied.

23. Third, the price difference between these ingredients is minimal at most, in addition to their use in negligible amounts, which cannot justify the cost disparity.

24. Fourth, there is little if any difference between the two ingredients, as the most predominant chemical constituent of oat kernel oil are tocopherols.

25. Tocopherols, including tocopheryl acetate, are a form of vitamin E, used as skin-conditioning agents, which is what oat kernel oil is used for.

**III. CONCLUSION**

26. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

27. As a result of the false and misleading representations, the Baby version is sold for twice as much as the Adult version, promoted as specially formulated for use in babies, even though it is almost identical in its composition to the regular version.

### Jurisdiction and Venue

28. Jurisdiction is pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

29. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

30. Plaintiff is a citizen of New York.

31. Defendant is a New Jersey corporation with a principal place of business in Skillman, New Jersey, Somerset County, and a citizen of New Jersey.

32. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

33. The members of the class Plaintiff seeks to represent are more than 100, because the Products have been sold for several years with the representations described here, from thousands of locations including grocery stores, big box stores, drug stores, convenience stores, club stores and online, across the States covered by Plaintiff's proposed classes.

34. Venue is in this District with assignment to the Brooklyn Courthouse because a substantial part of the events or omissions giving rise to these claims occurred in Queens County, including Plaintiff's purchase and/or use of the Baby version and awareness and/or experiences of

and with the issues described here.

## Parties

35. Plaintiff Cecilia Yang is a citizen of Fresh Meadows, Queens County, New York.

36. Defendant Johnson & Johnson Consumer Inc., is a New Jersey corporation with a principal place of business in Skillman, New Jersey, Somerset County.

37. Defendant is one of the largest manufacturers of personal care products in the world, from oral care to antiperspirants, skin care and suntan lotion.

38. Products under the Neutrogena brand includes shampoos and suntan lotions, and are sold at premium prices compared to other similar products.

39. Plaintiff purchased the Baby product at locations including Target, 1863 Broadway New York NY 10023, between November 2020 and November 2022, among other times.

40. Plaintiff believed and expected the Baby version was specifically formulated and designed for the unique needs of babies and relied on the labeling and packaging for this conclusion, including the color, claims about its natural and pure qualities, that it was fragrance free and ideal for a baby's sensitive skin, which made her think its higher price compared to the Adult version was justified.

41. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, and/or images on the Products, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Products and separately, through in-store, digital, audio, and print marketing.

42. Plaintiff bought the Baby version at or exceeding the above-referenced price instead of the Adult version.

43. Plaintiff paid more for the Baby version than she would have had she known the representations and omissions that is was specifically formulated for babies and that its price difference compared to the adult version were justified on this basis, were false and misleading, or would not have purchased it.

44. The value of the Baby version that Plaintiff purchased was materially less than its value as represented by Defendant.

## Class Allegations

45. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Baby version over the Adult version during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of New Jersey, New Hampshire, and Rhode Island who purchased the Baby version over the Adult version during the statutes of limitations for each cause of action alleged.

46. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

47. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

48. Plaintiff is an adequate representative because her interests do not conflict with other members.

49. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

50. Individual actions would risk inconsistent results, be repetitive and are impractical

8

to justify, as the claims are modest relative to the scope of the harm.

51. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

### New York General Business Law ("GBL") §§ 349 and 350

52. Plaintiff incorporates by reference all preceding paragraphs.

53. Plaintiff believed the Baby version was specifically formulated and designed for the unique needs of babies, when it was not, and was substantially similar to the Adult version.

54. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

55. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

56. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

57. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

58. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

59. The Baby version was manufactured, identified, marketed and sold by Defendant and

expressly and impliedly warranted to Plaintiff that it was specifically formulated and designed for the unique needs of babies.

60. Defendant directly marketed the Baby and Adult versions to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

61. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, a product containing natural and pure ingredients, that would be gentle and sensitive to a baby's skin.

62. Defendant's representations about the Baby version compared to the Adult version were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it was specifically formulated and designed for the unique needs of babies.

63. Defendant's representations affirmed and promised that the Baby version was specifically formulated and designed for the unique needs of babies, while the Adult version, costing half the price, could not provide the same benefits to babies.

64. Defendant described the Baby version compared to the Adult version as specifically formulated and designed for the unique needs of babies, which became part of the basis of the bargain that it would conform to its affirmations and promises, which is one of the reasons she paid more for it.

65. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Baby version compared to the Adult version.

66. This duty is based on Defendant's outsized role in the market for sunscreens, custodian of the recognized and trusted Neutrogena brand.

67. Plaintiff recently became aware of Defendant's breach of the warranties for the Baby and Adult versions.

68. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the warranties for the Baby and Adult versions.

69. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

70. The Baby and Adult versions did not conform to their affirmations of fact and promises due to Defendant's actions, as neither was specifically formulated for babies or adults.

71. The Baby and Adult versions were not merchantable because they were not fit to pass in the trade as advertised, not fit for the ordinary purpose for which they were intended and did not conform to their promises or affirmations of fact made on their packaging, container or label, because they were marketed as if they had substantive differences of utility for use by babies and adults.

72. The Baby and Adult versions were not merchantable because Defendant had reason to know the particular purpose for which the Baby version was bought by Plaintiff, because she expected it was specifically formulated for babies, with natural and pure ingredients, and without ingredients that could irritate a baby's sensitive and delicate skin, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

Fraud

73. Defendant misrepresented and/or omitted the attributes and qualities of the Baby and Adult versions, that the former was specifically formulated for babies, even though they differed only through substitution of the least predominant ingredient, which happened to be identical in

function in each version.

Unjust Enrichment

74. Defendant obtained benefits and monies because the Baby version was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   November 20, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

Law Office James Chung
James Chung
43-22 216th Street
Bayside, NY 11361
(718) 461-8808
Jchung_77@msn.com